THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARTIN J. WALSH, SECRETARY OF LABOR,  :
UNITED STATES DEPARTMENT OF LABOR,  :
         :
      Plaintiff,  :
    v.  :  **3:21-CV-1628**
      :  **(JUDGE MARIANI)**
LA TOLTECA WILKES BARRE, INC. d/b/a  :
LA TOLTECA AUTHENTIC MEXICAN  :
RESTAURANT and CARLOS DE LEON,  :
      :
    Defendants.  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 21).

Plaintiff seeks partial summary judgment on various alleged Fair Labor Standards Act

("FLSA") violations and their associated remedies. For the reasons that follow, the Court will

grant Plaintiff's Motion in its entirety.

### II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

This action arises out of employment activities and practices that allegedly took

place at the La Tolteca Authentic Mexican Restaurant in Wilkes-Barre, Pennsylvania. The

facts below are undisputed by the parties.

---

[1] In some instances, the parties partially admit or qualify their responses. In the Statement of
Undisputed Facts, the Court includes only those facts which are agreed upon by the parties. The parties
provide citations to the record in support of their stated facts which have been verified by the Court, but the
Court does not include them in the recitation set out in the text.

Defendant La Tolteca Wilkes-Barre, Inc., doing business as "La Tolteca Authentic Mexican Restaurant," ("La Tolteca") is a Pennsylvania corporation registered at 200 Mundy Street, Wilkes Barre, PA 18702. (Pl.'s Statement of Material Facts ("SOF"), Doc. 22 ¶ 1; Defs.' Resp. to Pl.'s Statement of Material Facts ("RSOF"), Doc. 28 ¶ 1.) Defendant is engaged in a full-service restaurant at the same address. (SOF ¶ 1; RSOF ¶ 1.) During this time period, La Tolteca was an enterprise that was engaged in commerce or in the production of goods for commerce under Section 3(s)(1)(A) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, § 203(s)(1)(A). (SOF ¶ 4; RSOF ¶ 4.)

Defendant Carlos De Leon ("De Leon") has operated La Tolteca since on or about 2004 when he moved to Wilkes Barre, Pennsylvania. (SOF ¶ 5; RSOF ¶ 5.) De Leon is the Vice President of La Tolteca and owns a twenty-five percent (25%) interest in the business. (SOF ¶ 6; RSOF ¶ 6.) De Leon made decisions relating to La Tolteca's compensation policies affecting La Tolteca's employees. (SOF ¶ 7; RSOF ¶ 7.) Additionally, De Leon made decisions relating to the recordkeeping of hours worked by La Tolteca's employees. (SOF ¶ 8; RSOF ¶ 8.) De Leon was also involved in establishing, determining, or approving policies concerning tips earned by La Tolteca's employees, and had the authority to fire, hire, and supervise La Tolteca employees. (SOF ¶¶ 9-10; RSOF ¶¶ 9-10.)

De Leon was responsible for hiring the general managers at La Tolteca, including Cynthia Martz and Jaqueline Lopez. (SOF ¶ 11; RSOF ¶ 11.) De Leon also hired assistant

manager Jesus Figueroa (SOF ¶ 12; RSOF ¶ 12), as well as kitchen employees Raul

Garcia, Willian Ramirez,[2] and Luis Argote Contreras (SOF ¶ 13; RSOF ¶ 13).

　　As part of his job, De Leon signed checks for bonuses to employees. (SOF ¶ 14;

RSOF ¶ 14.) De Leon was also responsible for explaining the various pay practices,

including how much employees were to be paid, to the general managers at La Tolteca.

(SOF ¶ 16; RSOF ¶ 16.) De Leon made the decision to require servers and bartenders to

give a portion of their net sales to a tip pool. (SOF ¶ 17; RSOF ¶ 17.) Cynthia Martz and

Jose Rodriguez collected a percentage of total sales from servers as part of the tip pool.[3]

(SOF ¶ 19; RSOF ¶ 19.) When tipping practices changed, and sometime in 2019, De Leon

instructed Lopez on the new tipping practices.[4] (SOF ¶ 20; RSOF ¶ 20.)

　　During the relevant time period, La Tolteca employed servers and bartenders. (SOF

¶ 25; RSOF ¶ 25.) La Tolteca generally paid servers a cash wage of $3.00 to $3.50 per

hour (SOF ¶ 26; RSOF ¶ 26), and generally paid bartenders a cash wage of $6.00 to $7.00

per hour (SOF ¶ 27; RSOF ¶ 27). Defendants paid runners and bussers a cash wage of

approximately $7.00 per hour. (SOF ¶ 32; RSOF ¶ 32.) During the relevant time period,

---

[2] At various points in their briefs and Statements of Facts, the parties misspell Willian Ramirez's first and last name, referring to him as "William" or "Willian Rodriquez." (*See* Doc. 23 at 15.)

[3] Assistant Manager Jose Rodriguez should be distinguished from kitchen employee Willian Ramirez, who is misnamed at various points in the parties' briefs as "Willian Rodriquez."

[4] Defendants correctly note that the specific portion of De Leon's deposition testimony cited by Plaintiff does not support the stated fact that the checks were for kitchen employees. However, shortly after the cited portion of De Leon's deposition, the deposition does support that the referred-to bonus checks were given to kitchen employees. (De Leon Dep., Doc. 21-9 at 61:1-21.) Therefore, the Court renders this fact undisputed.

Defendants claimed a tip credit towards the minimum wage owed to servers and bartenders (SOF ¶ 28; RSOF ¶ 28) whereby La Tolteca required servers and bartenders to tip out anywhere between 2-4% of their net sales to tip pool participants (SOF ¶ 29; RSOF ¶ 29).

From approximately July 2019 to the present, Lopez has been the General Manager of La Tolteca. (SOF ¶ 33; RSOF ¶ 33.) Jose Rodriguez was an assistant manager during a portion of the relevant time period. (SOF ¶ 45; RSOF ¶ 45.) Cynthia Martz was the General Manager during a portion of the relevant time period. (SOF ¶ 35; RSOF ¶ 35.)

During the relevant time period, Rodriguez and Martz collected the tip out monies from servers and bartenders. (SOF ¶ 36; RSOF ¶ 36.) Rodriquez left the monies surrendered by servers and bartenders in a safe for De Leon and was never asked to hand out monies to bussers or runners. (SOF ¶ 38; RSOF ¶ 38.)

During the relevant time period, La Tolteca employed kitchen cooks, prep cooks, and grill cooks. (SOF ¶ 43; RSOF ¶ 43.) Employees Raul Garcia, Willian Ramirez, and Luis Argote Contreras worked in the kitchen at La Tolteca. (SOF ¶ 48; RSOF ¶ 48.) Plaintiff and Defendants agree that the kitchen employees at issue in this case are not exempt from the minimum wage and overtime requirements of the FLSA. (SOF ¶¶ 39, 41; RSOF ¶¶ 39, 41.) Both parties also agree that the kitchen employees at issue are entitled to the minimum wage protections of the FLSA. (SOF ¶ 40; RSOF ¶ 40.) From at least February 16, 2016, through at least October 1, 2017, Garcia, Ramirez, and Argote Contreras were paid a flat bi-weekly salary. (SOF ¶ 49; RSOF ¶ 49.) In that same time period, Defendants' payroll

4

records do not show hours worked for Garcia, Ramirez, and Argote Contreras. (SOF ¶ 50; RSOF ¶ 50.) Defendants' payroll report which was faxed to Defendants' accountants did not include any hours worked for Garcia, Ramirez, and Argote Contreras. (SOF ¶ 51; RSOF ¶ 51.)

Defendants claim that the "tip out" surrendered by servers and bartenders was collected and distributed by management. (SOF ¶ 55; RSOF ¶ 55.) De Leon claimed that the "tip out" monies were distributed to runners and bussers. (SOF ¶ 56; RSOF ¶ 56.) As part of the Wage and Hour investigation, investigator Luis Nieves spoke with employees at La Tolteca, including employees who were employed as bussers/guacamoleros. (SOF ¶¶ 60-61; RSOF ¶¶ 60-61.) Nieves also spoke with tipped employees including servers and bartenders. (SOF ¶ 78; RSOF ¶ 76.) Nieves spoke with one employee who told him that they only started receiving a percentage of the "tips" collected from servers on or about September 2019. (SOF ¶ 62.)[5] Nieves also spoke with another employee who told him they started receiving tips from servers only once Jaqueline Lopez became the manager. (SOF ¶ 62.)[6]

---

[5] Defendants dispute this statement of fact by claiming that they cannot confirm whether Nieves' declaration testimony is true. (RSOF ¶ 62.) Department of Labor investigations frequently rely on anonymous statements made by employees to investigators. Defendants offer no factual basis to dispute Nieves' declaration testimony, and only argue that they cannot confirm the information provided. Therefore, the Court will accept Nieves' statements regarding his conversations with employees as undisputed.

[6] *Id.*

De Leon testified that he told managers to tell servers what the job was about, including the tip pool that was in process. (SOF ¶ 65; RSOF ¶ 65.) De Leon testified that the employee handbook did not include any information about tips and that he was "pretty sure there wasn't anything on the tip and all that." (SOF ¶ 69; RSOF ¶ 68.) De Leon himself was not familiar with the phrase "tip credit" in English. (SOF ¶ 70; RSOF ¶ 69.) De Leon also testified to the following requirements to pay below the minimum wage:

> Q. Do you know, if you know in 2016, what the requirements were for an employer paying less than $7.25 an hour?
>
> A. The require?
>
> Q. Yes.
>
> A. Yeah.
>
> Q. Okay.
>
> A. You have to -- you have to make sure that tip will get paid for to be considered, you know, a minimum wage for server.

(Plaintiff's Ex. 2, De Leon Deposition ("De Leon Dep."), Doc. 21-9 at 136:6-11).

Prior to becoming a manager, Lopez was employed by De Leon as a server at La Tolteca. (SOF ¶¶ 72; RSOF ¶¶ 70-71.) When De Leon initially hired Lopez as a server, he discussed with her the rate of pay, taking care of customers, her schedule, and indicated that all her tips were for her. (SOF ¶ 74; RSOF ¶ 73.) Defendants have not produced the Wage Notification allegedly received by Lopez in 2009 or 2016. (SOF ¶ 77; RSOF ¶ 75.)

The Wage Notifications Defendants provided in response to discovery are contained in Plaintiff's Exhibit 12. (SOF ¶ 84; RSOF ¶ 82.) The title/header in eleven (11) of the Wage Notifications in Exhibit 12 is "Plaza Azteca Wage Notification." (SOF ¶ 85; RSOF ¶ 83.) After Lopez was hired as a manager, and sometime after July 2019, De Leon told her to provide employees with the Wage Notification, stating "when you hire people that you need to show it to the employee." (SOF ¶ 86; RSOF ¶ 84.)

The Wage Notification in Exhibit 12 does not include the following required language in item [2] of 29 C.F.R. § 531.59(b): the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer. (SOF ¶ 87; RSOF ¶ 85.)[7] The Wage Notification also does not include the required language in item [5] of 29 C.F.R. § 531.59(b): that the tip credit shall not apply to any employee who has not been informed of these requirements in this section [referring to items [1]-[5]]. (SOF ¶ 89; RSOF ¶ 87.) Defendants have not produced any Wage Notifications prior to 2019 (SOF ¶ 90; RSOF ¶ 88), and all of the Wage Notifications in Exhibit 7 are dated September 8, 2019, or later (SOF ¶ 91; RSOF ¶ 89).

At all relevant times, Defendants reported eleven percent (11%) of the net sales for two weeks as the employees' tips to Defendants' payroll provider. (SOF ¶ 93; RSOF ¶ 91.) On or about October 11, 2018, De Leon told Wage and Hour Investigator Cooper-Kreider

---

[7] The Court includes the numbering of the requirements in accordance with the order in which they are listed in 29 C.F.R. § 531.59(b).

that runners and chip servers/guacamoleros received a percentage of the servers and bartenders "tip out." (SOF ¶ 94; RSOF ¶ 92.)

Defendants provided "Employee Tip Reports" during the Wage and Hour investigation. (SOF ¶ 96; RSOF ¶ 94.) In those reports, the column "P/O Tips" in Plaintiff's Exhibit 13 represents the three percent (3%) or four percent (4%) of that employee's net sales for the day. (SOF ¶ 97; RSOF ¶ 95.) Most of the "Employee Tip Reports" provided in the Wage and Hour investigation are for 2017. (SOF ¶ 99; RSOF ¶ 97.)

During discovery, Defendants produced a set of tip records documented in Plaintiff's Exhibit 14 which do not contain any records dated 2018. (SOF ¶ 102; RSOF ¶ 100.) Prior to January 2020, the records in Exhibit 14 do not list any runners, bussers, or guacamoleros as receiving any portion of the servers' or bartenders' net sales. (SOF ¶ 103; RSOF ¶ 101.)

De Leon expected that tip records were being kept by La Tolteca. (SOF ¶ 104; RSOF ¶ 102.) Prior to the Wage and Hour investigation, Defendants were aware that non-exempt employees were entitled to time and a half their regular rate for hours worked over forty (40) hours in a workweek. (SOF ¶ 105; RSOF ¶ 103.) Prior to the investigation, La Tolteca claims it cannot admit or deny whether it consulted with an outside party to determine whether its compensation practices were compliant with the FLSA. (SOF ¶ 106; RSOF ¶ 104.)[8]

---

[8] Defendants provide "additional facts" (RSOF ¶¶ 105-133) in their Response to Plaintiff's Statement of Undisputed Material Facts that are not clearly responsive to the facts alleged by Plaintiff. These non-responsive statements are not contemplated by Local Rule 56.1 and are not considered for the purpose of this motion. *See Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019)

## III. STANDARD OF REVIEW

### (A) Summary Judgment

Summary judgment "is appropriate only where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549

F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute

is material only if it might affect the outcome of the suit under governing law." *Kaucher v.*

*County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of

those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P.

56(a).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-

moving party must offer specific facts contradicting those averred by the movant to establish

a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct.

3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary

judgment simply on the basis of the pleadings, or on conclusory statements that a factual

_____

(upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 64, 613–14 (3d Cir. 2018).

issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

Plaintiff alleges seven distinct Claims in his Motion for Partial Summary Judgment. (Doc. 21.)[9] Plaintiff outlines his Claims as the following:

> (1) Defendants violated Sections 6 and 15(a)(2) of the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a) and 215(a)(2), by paying many of their tipped employees employed as servers and bartenders for rates less than the applicable statutory minimum rate prescribed in Section 6 of the Act; (2) Defendants practice of seizing a portion from the tipped employees' tips also violated Section 3(m)(2)(B) of the Act, 29 U.S.C. § 203(m)(2)(B); (3) Defendants have violated the provisions of Sections 7 and 15(a)(2) of the overtime provisions of the FLSA, 29 U.S.C. §§ 207(a)(1) and 215(a)(2) by failing to pay employees overtime at a rate of at least one-and-one-half times their regular rate; (4) Defendants have violated the Section 11(c) and 15(a)(5) recordkeeping requirements of the FLSA, 29 U.S.C. § 211(c), as a result of their failure to make, keep and preserve adequate and accurate records of many of their employees['] . . . wages, hours and other conditions of employment which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516; (5) All defendants are "employers" under Section 3(d) of the FLSA and are therefore liable for the violations of the FLSA; (6) Defendants are liable under Section 16(c) of the FLSA, 29 U.S.C. § 216(b)

---

[9] Plaintiff does not list or outline his various claims as "counts" in his complaint. Therefore, the Court will refer to Plaintiff's individual bases for summary judgment as "claims," numbered in the order in which they are presented and numbered in his Partial Motion for Summary Judgment. (Doc. 21).

for liquidated damages in an amount equal to their liability for back wages as a result of their FLSA violations; and (7) Plaintiff is entitled to injunctive relief.

(*Id*.)

The Court will address each of Plaintiff's Claims in turn. However, as a preliminary matter, the Court will first determine where Defendants violated the recordkeeping provisions of the FLSA since that claim's disposition is relevant to the remainder of Plaintiff's claims. The Court will then review the applicable statute of limitations since it is also central to the remainder of Plaintiff's claims. Finally, because Claim V of Plaintiff's motion regarding the status of Defendants as "employers" is relevant to the disposition of the remainder of Plaintiff's Claims, the Court will also address that Claim prior to evaluating the remainder of Plaintiff's Claims.

### (A) Recordkeeping Obligations

Plaintiff's Claim IV for summary judgment alleges that

Defendants have violated the Section 11(c) and 15(a)(5) recordkeeping requirements of the FLSA, 29 U.S.C. § 211(c), as a result of their failure to make, keep and preserve adequate and accurate records of many of their employees['] . . . wages, hours and other conditions of employment which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

(Doc. 23 at 20-21.)

Defendants contend that they did comply with all recordkeeping requirements for the relevant time period. (*See* Doc. 27 at 20-21.)

Section 11(c) of the FLSA, 29 U.S.C. § 211(c), outlines an employer's obligation to

maintain records of their employees and related information:

> Every employer subject to any provision of this chapter or of any order issued
> under this chapter shall make, keep, and preserve such records of the persons
> employed by him and of the wages, hours, and other conditions and practices
> of employment maintained by him, and shall preserve such records for such
> periods of time.

29 U.S.C. § 211(c).

Under the Department of Labor's regulations, an employer must preserve "all payroll

or other records containing employee information and data required under any of the

applicable sections of this part" for at least three years. 29 C.F.R. § 516.5.[10] Pursuant to 29

C.F.R. § 516.2, employers are required to maintain records and preserve payroll information

relating to employees subject to minimum wage and overtime provisions of the FLSA:

> Employees subject to minimum wage or minimum wage and overtime
> provisions pursuant to section 6 or sections 6 and 7(a) of the Act.
>
> (a) Items required. Every employer shall maintain and preserve payroll or other
> records containing the following information and data with respect to each
> employee to whom section 6 or both sections 6 and 7(a) of the Act apply:

---

[10] Here, the parties dispute whether the applicable tolling agreement (Doc. 28-8) applies to Plaintiff's recordkeeping claim. (*See* Doc. 27 at 20-21.) Specifically, Defendants state that "[b]ecause Defendants are only required to keep records for three years, Plaintiff's argument that Defendants failed to keep records for kitchen employees prior to October 1, 2017 should be rejected and summary judgment denied." (*Id.* at 21.) Defendants' argument is meritless, as the current tolling agreement is clear in its application to "any other defense raised by the undersigned employers (including laches) that otherwise would be available to the undersigned employers concerning the timeliness of any legal proceedings that may be brought against any of the undersigned employers, including but not limited to any proceedings brought under sections 215, 216(b), 216(c), 216(e) and/or 217 of the Act." (Doc. 28-8.) Section 215 of the Act makes it unlawful to violate Section 211(c), the recordkeeping statute at issue. Defendants' references to cases in other circuit courts does not alter the clear language of the present tolling agreement. Therefore, the tolling period applies to Plaintiff's recordkeeping claim, and the applicable time period is March 10, 2016, to September 21, 2021.

. . . .

(5) Time of day and day of week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period). If the employee is part of a workforce or employed in or by an establishment all of whose workers have a workweek beginning at the same time on the same day, a single notation of the time of the day and beginning day of the workweek for the whole workforce or establishment will suffice,

(6) (i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

(7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),

(8) Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,

(9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

(10) Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,

(11) Total wages paid each pay period,

(12) Date of payment and the pay period covered by payment.

14

29 C.F.R. § 516.2.

Pursuant to 29 C.F.R. § 516.28, employers are also required to maintain records of

tipped employees and employer-administered tip pools, including hours worked and the

amount of tips received. In pertinent part, the regulations provide as follows:

Tipped employees and employer-administered tip pools

(a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in § 516.2(a) and, in addition, the following:

(1) A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.

(2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).

(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of the difference between $2.13 and the applicable minimum wage specified in section 6(a)(1) of the Act). The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.

(4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.

(5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

15

(b) With respect to employees who receive tips but for whom a tip credit is not taken under section 3(m)(2)(A), any employer that collects tips received by employees to operate a mandatory tip-pooling or tip-sharing arrangement shall maintain and preserve payroll or other records containing the information and data required in § 516.2(a) and, in addition, the following:

> (1) A symbol, letter, or other notation placed on the pay records identifying each employee who receive tips.

> (2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).

29 C.F.R. § 516.28.

Plaintiff alleges that there is no dispute of fact that "[d]espite attempting to claim the tip credit, Defendants kept incomplete sporadic records of amount of tips their server employees received, and the amount by which server employees' wages were compensated by tips- in other words, the amount of tip credit Defendants claimed under Section 3(m). 29 C.F.R. § 516.28. (SOF ¶¶ 57-9)." (Doc. 23 at 21.) Plaintiff references the fact that Defendants did not maintain tip pool records during the relevant time-period, and no records prior to January 2020. (*Id*.) Plaintiff argues that this failure to maintain records of monies Defendants actually distributed as part of the tip pool makes it "impossible to determine with any accuracy whether 1) tipped employees received sufficient tips to bring their hourly rate up to $7.25; or 2) the amount of the tips, if any, that actually went to other non-tipped employees." (*Id*. at 22.) Defendants allege that they produced records showing the tips received by servers and bartenders, tip pool records, and wages paid to tipped and non-tipped employees. (Doc. 27 at 20-21.) Defendants concede they "are missing some tip

pool records for 2019," but contend that they did maintain records of tips received during

most of the time-period at issue. (Doc. 27 at 21.)

Although Defendants dispute Plaintiff's statement of fact stating that "Defendants

have not produced any records for 2016, 2017, 2018 showing that the 'tip out' — the net

sales surrendered by servers and bartenders — was distributed to runners, bussers and/or

guacamoleros" (RSOF ¶ 59), there is a clear absence of records in 2016, 2018 and much of

2019. (*See* Docs 21-22 and 21-23.) Many of the sporadic records provided by Defendants

do not indicate a year, and most do not state the hours worked for the referenced employee.

(*Id.*) Additionally, the cited record supports that, even near the end of discovery, De Leon

did not have records available to provide to the Department of Labor:

> Q. And the other record would be how much total was collected in the envelopes and then given out. Do you have a record from 2016 that has that information?
>
> A. Not handy, no.
>
> Q. For 2017, do you have any record showing what money –
>
> A. No, ma'am.
>
> Q. -- went directly from the tip pool to these? And have you looked for those records?
>
> A. I look into some. I mean, it's a lot of paperwork and a lot farther. I know I probably keep, no. I mean, they have to be probably some in some of the file.

(De Leon Dep. at 148:14-25.)

The above-cited record confirms the deficient nature of the records provided by Defendants. (*Id*.) Additionally, the cited statement of facts (SOF ¶¶ 59, 95, 96-8, 102-3) and referenced record (De Leon Dep. at 71:2-14; 73:14-24; Ex. 13 – Tip Reports WH DOL 003292-3311; 003350-33572; Ex. 14 – Tip Records Discovery, DEF 031229-031280; Ex. 1 – Responses to Admissions No. 40) support the allegation that "Defendants kept no records whatsoever of the monies they allegedly distributed as part of the tip pool." (Doc. 23 at 21.) The parties agree that, in the tip reporting records, "[t]he column 'P/O Tips' in Ex. 13 represents the 3% or 4% of that employee's net sale for the day," and not the actual amount of tips received. (RSOF ¶ 95.) The parties also agree that "[a]t all relevant times Defendants reported 11% of the net sales for 2 weeks as the employees' tips to Defendants' payroll provider" (RSOF ¶ 91), failing to report the actual tips earned by employees as required by 29 C.F.R. § 516.28. De Leon admitted in his deposition that he took no personal responsibility to maintain adequate records:

> Q. In this litigation, I should say. You have looked for records like this one; is that correct?
>
> A. Yes, ma'am. Yes.
>
> Q. Was it your expectation as the owner of La Tolteca that this record was being kept?
>
> A. Yes.
>
> Q. At the restaurant?
>
> A. Yes.

Q. Did you -- was there any policy about keeping these records at the restaurant, like how long would you keep?

A. I mean, based off the knowledge for the accountant, we supposed to keep track -- you know, keep track the record for so many year.

(De Leon Dep. at 73:14-24).

Because the cited record reveals that there is no genuine dispute that Defendants failed to maintain up-to-date and accurate records of their employees, the Court will grant summary judgment on Claim IV of Plaintiff's motion.

**(B) Relevant Statute of Limitations and Time Period**

Plaintiff contends in his Brief in Support of Partial Summary Judgment (Doc. 23) that the relevant time-period at issue with respect to Defendants' alleged FLSA minimum wage, overtime, and liquidated damages claims is from February 28, 2016, to January 31, 2021. (*Id.* at 1.) Defendants, by contrast, allege in their Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 27) that the relevant time-period at issue is March 10, 2017, to January 31, 2021. (*Id.* at 9.)

Section 55 of the FLSA, 29 U.S.C. § 255, provides the relevant statute of limitations for actions relating to unpaid minimum wages, unpaid overtime compensation, and liquidated damages:

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255.

Here, Plaintiff and Defendants consented to a Statute of Limitations Tolling

Agreement ("Toll. Agr.," Doc. 28-8) that excluded a period of time from March 10, 2019, until

and including September 21, 2021, in computing the time limited by the FLSA's statute of

limitations:

> The Secretary and the undersigned employers agree that the time period beginning on March 10, 2019, until and including September 21, 2021 ("the tolling period") will not be included in computing the time limited by any statute of limitations, nor will the tolling period be raised in any other defense raised by the undersigned employers (including laches) that otherwise would be available to the undersigned employers concerning the timeliness of any legal proceedings that may be brought against any of the undersigned employers, including but not limited to any proceedings brought under sections 215, 216(b), 216(c), 216(e) and/or 217 of the Act, as a result of the Secretary's findings from his investigations of the undersigned employers. The Secretary and the undersigned employers specifically agree that any applicable statute of limitations shall be tolled for the entire tolling period set forth herein. Any legal proceedings brought by the Secretary or affected employees during the tolling period shall be deemed to have been filed on March 10, 2019. Any such legal proceeding brought by the Secretary or affected employees after September 21, 2021, shall be deemed to have been filed 926 days prior to the actual filing date.

(Toll. Agr. ¶ 4.)

Additionally, the Court finds that Defendants' violations of the relevant portions of the

FLSA were "willful," therefore permitting a three-year statute of limitations period that is

suggested in Plaintiff's brief (Doc. 23 at 1). *See* 29 U.S.C. § 255. The Third Circuit has

explained the threshold for a finding of willfulness:

Over thirty years ago, in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court addressed "the meaning of the word 'willful' as used in the statute of limitations applicable to civil actions to enforce the Fair Labor Standards Act[.]" *Id.* at 129, 108 S.Ct. 1677. [ . . . ] [B]ased on legislative history and the common and legal usage of the word "willful" – "considered synonymous with such words as voluntary, deliberate, and intentional" – the Court concluded that a violation of the FLSA was willful if, at minimum, the employer "showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" *Id.* at 132-33, 108 S.Ct. 1677 (citations and internal quotation marks omitted).

. . . .

Referencing the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007),[11] we noted that, "where 'willfulness' is an element of civil liability, 'we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well.' " *Id.* at 152 (citation omitted).

Thus, Supreme Court case law and our own precedent counsel against a standard for willfulness that requires a showing of egregiousness.

*Stone v. Troy Constr., LLC*, 935 F.3d 141, 148–50 (3d Cir. 2019).

There is sufficient evidence in the record for the Court to determine that there is no genuine dispute of fact that Defendants willfully violated the FLSA. As we explain, *supra*, the record reveals that Defendants recklessly, if not knowingly, failed to keep adequate records as to their employees' tip outs, minimum wages, and overtime payments. *See Id.* at 149. Defendants' consistent failure to keep accurate records during the Department of Labor's four-year investigation reveals that Defendants knowingly disregarded the requirements of Section 11(c) of the Act, and the lack of recordkeeping makes it impossible for the Court to determine the extent to which the violations took place. There is no basis by which the Court

could conclude that Defendants acted in good faith in light of their consistent failure to keep accurate and up-to-date records. Therefore, because the Court finds that Defendants' violations "showed [knowing or] reckless disregard" for their FLSA recordkeeping obligations, *McLaughlin*, 486 U.S. at 132, the applicable statute of limitations is three years, and the relevant time-period for the purpose of Plaintiff's motion for partial summary judgement regarding his minimum wage, unpaid overtime compensation, and liquidated damages claims is February 28, 2016, to January 21, 2021.

### (C) Defendants' Status as "Employers"

Plaintiff seeks summary judgment that Defendants are "employers" under § 3(d) of the FLSA, 29 U.S.C. § 203(d), and are therefore subject to the FLSA provisions at issue in his partial summary judgment motion. (Doc. 23 at 6-7.)[11] The FLSA sets out its definitions of "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Court need not inquire into the Third Circuit's *Enterprise Rent-A-Car* factors to determine whether De Leon is an "employer" under the FLSA, as Defendants have conceded in their Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment that De Leon is an "employer" under the FLSA. (*See*

---

[11] The parties only reference De Leon when discussing whether Defendants are "employers" for the purpose of the FLSA. (Doc. 23 at 6-7; Doc. 27 at 9.) The Court views the lack of dispute as to whether La Tolteca is an "employer" as a concession that both De Leon and La Tolteca are "employers" for the purpose of the Act. In any event, assuming *arguendo* that there was a dispute as to whether La Tolteca is an "employer" for the purpose of the FLSA, the Court would find that La Tolteca is an "employer" under the *Enterprise Rent-A-Car* factors. *See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012).

Doc. 27 at 9.) Because both parties agree that De Leon is an "employer," the Court finds

that De Leon is an "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and may

be subject to liability for violations of the FLSA. Claim V of Plaintiff's Motion for Partial

Summary Judgement is granted. (Doc. 23 at 6-7; Doc. 27 at 9.)

### (D) Minimum Wage Violations

The Court now considers Claim I of Plaintiff's Motion for Partial Summary Judgment.

(Doc. 21.) Plaintiff alleges that "Defendants violated Sections 6 and 15(a)(2) of the minimum

wage provisions of the [FLSA], 29 U.S.C. § 206(a) and § 215(a)(2), by paying many of their

tipped employees employed as servers and bartenders for rates less than the applicable

statutory minimum rate prescribed in Section 6 of the Act." (Doc. 21 at 1-2.) Defendants

argue that tipped employees earned a full minimum wage and that Defendants complied

with the relevant tip pool requirements. (Doc. 27 at 17.) Defendants contend that Plaintiff is

not entitled to partial summary judgment because a reasonable jury could find that its tip

credit employees earned sufficient tips and wages to satisfy Defendants' minimum wage

obligations. (*Id*.) The Court finds that summary judgment is warranted on this Claim.

Section 206 of the FLSA requires employers to pay each of its covered employees a

minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). Section 15(a) of the FLSA makes it

unlawful for any person "to violate any of the provisions of section 206." 29 U.S.C. § 215.

One exception to the FLSA's minimum wage requirement is the "tip credit," set out in 29

U.S.C. § 203(m), which permits employers to pay a tipped employee less than the minimum

wage so long as the tips and the wages, together, equal at least $7.25 per hour:

> (2)(A) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--

>> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

>> (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.

>> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).

29 C.F.R. § 531.59 specifies what notice to employees is necessary to comply with

Section 203(m) and to take a tip credit:

> (b) As indicated in § 531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee." Pursuant to section 3(m)(2)(A), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m)(2)(A) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the

employer, [3] which amount may not exceed the value of the tips actually received by the employee; [4] that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; [5] and that the tip credit shall not apply to any employee who has not been informed of the requirements in this section.

29 C.F.R. § 531.59(b).[12]

Plaintiff bears the burden at summary judgement to show Defendants failed to meet the requirements of 29 U.S.C. § 203(m)[13] to pay the tip credit rate. 29 C.F.R. § 531.59(a). Employers who choose to pay below the minimum wage must follow the command of the statute or otherwise they will receive no tip credit:

> Section 3(m) therefore allows an employer to reduce a tipped employee's wage below the statutory minimum by an amount to be made up in tips, but only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision. If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage ($3.35/hr in this case). *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322–23 (1st Cir.1992).
>
> . . . .
>
> In *Tango's Restaurant*, the First Circuit held that "Congress chose to allow employers a partial tip credit if, but only if, certain conditions are met." 969 F.2d at 1322. The notice requirement is a firm one:
>
>> It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has

---

[12] The Court has added the numbering of the five notice requirements in the language of 29 C.F.R. § 531.59(b) quoted above to remain consistent with the parties' briefing that references these requirements in their numerical order.

[13] The Court notes that Section 3(m) of the Act is codified as 29 U.S.C. § 203(m) and therefore the provisions are identical.

actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced the requirement.... If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide. *Id*. at 1323 (internal citations omitted).

*Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994).

District Courts in this Circuit have determined that an employer must comply with *all*

the specific notice requirements set out in 29 C.F.R. § 531.59(b):

The tip credit exception is available to an employer "only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994). One such provision states that "[t]he amount on account of tips may not exceed the value of the tips actually received by an employee." 29 U.S.C. § 203(m)(2)(A). The regulations implementing Section 203(m) also require an employer to notify tipped employees of this and other information. *See* 29 C.F.R. § 531.59(b). Specifically, the regulation requires an employer claiming a tip credit to notify tipped employees that:

> The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

*Id*. (emphasis added).

This "notice requirement is a firm one," *Reich*, 28 F.3d at 404, and courts "strictly construe[ ]" it to require an employer to "take affirmative steps to inform affected employees of the employer's intent to claim the tip credit." *Perez v.*

> *Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014); *see also Lawrence*
> *v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008) ("FLSA
> exemptions should be construed narrowly, that is, against the employer.").
> Accordingly, the employer bears the burden of showing that it satisfied the
> notice requirement, and if the employer does not, "then no tip credit can be
> taken and the employer is liable for the full minimum-wage." *Reich*, 28 F.3d at
> 403.

*Casco v. Ponzios RD, Inc.*, No. CV 16-2084 (RBK/JS), 2019 WL 1650084, at *4–5 (D.N.J.

Apr. 17, 2019).

To survive a summary judgment motion, a defendant must therefore show a material

dispute of fact as to whether they complied with all the tip credit notice and minimum wage

requirements set out in 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59. *Id*.

**(1) Tip Credit Notice**

Plaintiff alleges there is no dispute of fact that Defendants failed to provide their

employees with proper tip credit notice according to 29 C.F.R. § 531.59(b). (Doc. 23 at 13-

14.) Defendants argue that they are not required to inform employees of each of the five

elements outlined in § 531.59(b), and that, in any event, they did inform employees of the

required notices. (Doc. 27 at 10-13.) Because there is no genuine dispute of material fact

that Defendants failed to comply with the tip credit notice requirements, the Court will grant

summary judgment on this basis.

Plaintiff alleges there is no dispute of fact that "Defendants did not provide verbal

notice." (Doc. 23 at 14.) Plaintiff references De Leon's deposition testimony as evidence that

the tip credit notice requirements were not met. (*Id*. at 14-15.) Defendants point to

declaration testimony indicating that employees were informed of the relevant tip notice requirements. (Doc. 27 at 11-12.) Specifically, Lopez and Figueroa each stated in their post-discovery declarations that they informed employees of the required notices and that they were informed of the proper tip notice requirements when hired. (*See* Lopez Dec. (Doc. 28-4) ¶¶ 4-5; Figueroa Dec. (Doc. 28-5) ¶ 4.)[14]  Defendants also reference the deposition

---

[14] The Court declines to consider the statements in De Leon's declaration (De Leon Dec. ¶ 6) that contradict his earlier deposition testimony as it relates to providing the required notice to employees. Specifically, De Leon testified in his deposition that he did not recall telling servers the information in the five tip notice requirements:

> Q. . . . So you would tell them the amount that they were paid, the percentage, the tip out process that we talked about and the side work that they would have to do as a server because obviously, there's side work to be done. Anything else that you can recall telling any server?
> A. No. I mean, I'm pretty sure the manager explain, you know what I mean, show them there's a form that they needed to fill out. That's what we document if they give it to manager, you know, (unintelligible.)

(De Leon Dep. at 134:3-12).

This testimony is contradicted by De Leon's later-provided post-deposition declaration:

> From 2016 to the present, I have always verbally informed new hires who are paid the tip credit reduced minimum wage of the following:
>
> a.  The hourly rate La Tolteca was going to pay them (i.e. $3.00);
> b.  What the full minimum wage was at that time (i.e. $7.25);
> c.  The difference between the hourly pay rate and the minimum wage rate (i.e. $4.25);
> d.  If the employee did not earn sufficient tips to cover the full minimum wage, the restaurant would pay them the difference;
> e.  That the restaurant had a mandatory tip pool between server, bartenders, food runners, and bussers, and that he/she needed to contribute to the pool if working as a server or bartender, but otherwise all other tips received belong to the employee;
> f.  That only after receiving this tip credit information would the restaurant begin to pay he/her on a tip credit basis.

(De Leon Dec. ¶ 6).

testimony of Lopez, who testified that she informed servers of information regarding "the tip, tip out" that is included in the Wage Notification:

> Q. If you were to hire someone, you're telling me you have to do certain things, right?
>
> A. Yes.
>
> Q. What are they?
>
> A. I need to explain like the -- I pay how much per hour, what positions, and I explain about the -- if it's a server, I need to explain about the tip, tip-out. Most of the same paper, the Wage Notification. And what is the full-time, if the people wants to work full-time or part-time. And explain everything like what is the work, what I need the people to do.
>
> (Lopez Dep. 56:1-12.)

Lopez also testified in her deposition that De Leon provided her with the Wage Notification form when he hired her:

> A. He explain me like everything.

---

In reviewing a motion for summary judgment, the Third Circuit has explained that contradictory post-deposition declarations by witnesses may be disregarded under the "sham affidavit" doctrine:

> The sham affidavit rule allows a court to disregard a later statement by a deponent on two conditions: the later statement contradicts the witness's deposition testimony, and the discrepancy between the two statements is neither supported by record evidence nor otherwise satisfactorily explained. *See [Daubert v. NRA Grp., LLC,* 861 F.3d 382, 391-92 (3d Cir. 2017]); *Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 254 (3d Cir. 2007) (explaining that "courts generally have refused to disregard the affidavit" where there is "independent evidence in the record to bolster an otherwise questionable affidavit" (internal quotation marks omitted)); *see generally* 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2726.1 (4th ed. 2021).

*SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 209-10 (3d Cir. 2022).

The Court concludes that De Leon's unexplained contradictory assertions in his declaration relating to providing adequate notice to employees will not be considered.

Q. Okay. What does everything mean?

A. Like how he pay and how much I make for an hour and all this stuff.

Q. So what did he tell you about how you would be paid per hour?

A. The Wage Notification.

Q. Wage Notification, is what you said, Miss Lopez?

A. Yes.

Q. What does that mean?

A. The paper would explain how much you're making per hour.

Q. Mr. De Leon explained to you a paper that says what?

A. How much you're making per hour.

Q. How much were you making per hour?

A. $3.50.

. . . .

Q. Besides getting paid $3.50 and that you would be taking care of customers, what else did Mr. De Leon tell you?

A. About the tips.

Q. What did he tell you about the tips?

A. That all the tips is for me, and he explain me like the tips and how much I make, how much is my pay for hour, and what is my schedule, and all this stuff.

(Lopez Dep. 16:10-18:25, 48:10-18.)

The post-discovery declarations of management as to their practice of giving employees the tip credit notice and deposition testimony from Lopez are not sufficient to create a genuine dispute of material fact as to whether tipped employees were adequately informed of the relevant tip credit notices. Defendants' post-discovery declarations of management that make only conclusory statements regarding their compliance with the Act are not a basis to decline summary judgement when there is no actual evidence that Defendants consistently informed their employees of all the tip credit notice provisions. Additionally, Lopez's vague deposition testimony provides no evidence that Defendants provided their employees with all of the required tip notice requirements specified in 29 C.F.R. § 531.59(b). The Third Circuit's rule that "conclusory self-serving affidavits are insufficient to withstand a motion for summary judgment," *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012), applies equally to self-serving deposition testimony. *See Irving v. Chester Water Auth.*, 439 F. App'x. 125, 127 (3d Cir. 2011). As our sister courts in this Circuit have similarly held, we conclude that Defendants' and their management's "self-serving deposition [and declaration] testimony, when considered alongside the other evidence in the case, cannot create a genuine issue of material fact." *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 531 (W.D. Pa. 2021). Therefore, the Court finds that there is no dispute of fact that Defendants failed to provide their employees with proper tip credit notice according to 29 C.F.R. § 531.59(b).

**(2) Minimum Wage**

Plaintiff relatedly alleges that there is no dispute of fact that employees did not make the required minimum wage. (Doc. 23 at 16-17.) Plaintiff contends that "Defendants cannot show that the employees made $7.25 per hour" because Defendants' "lackluster recordkeeping practices means they had no idea how much tipped employees actually received per hour." (*Id.*) Defendants argue that they offer sufficient evidence to create a material dispute as to whether employees were paid the minimum wage despite lacking complete payroll records. (Doc. 27 at 15-17.)

Defendants offer post-discovery declarations that state that employees were paid the minimum wage. (*See* Lopez Dec. ¶ 6, Figueroa Dec. ¶ 5, Ramirez Perez Dec. (Doc. 28-6) ¶ 3.)[15] In De Leon's declaration, he stated that "if the employee did not earn sufficient tips to cover the full minimum wage, the restaurant would pay them the difference," indicating that La Tolteca would ensure that its employees would be paid the full minimum wage in the event tips are insufficient. (De Leon Dec. ¶ 6(d).) Lopez, Figueroa, and Ramirez Perez stated in their declarations that they could "verify" that they made minimum wage as employees by looking at their paystubs to determine how much total wages La Tolteca paid them that week, adding all the tips they received, and then dividing that number by the total hours worked. (Lopez Dec. ¶ 6; Figueroa Dec. ¶ 5; and Ramirez Perez Dec. ¶ 5.) These

---

[15] Everlinda Ramirez Perez was a server at La Tolteca during the relevant time period. (*See* RSOF ¶ 113.) She should be distinguished from Willian Ramirez, one of the kitchen employees at issue.

post-discovery declarations do little to create a genuine dispute of material fact as to whether Defendants' employees were paid a minimum wage in light of the significant Section 11(c) recordkeeping violations. *See Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("conclusory self-serving affidavits are insufficient to withstand a motion for summary judgment.") There is no concrete evidence cited by Defendants showing that their employees were always paid a minimum wage. The lack of recordkeeping as to whether Defendants' employees were actually paid a minimum wage, in violation of Section 11(c) of the Act, means that Defendants cannot show at trial that they paid their employees a minimum wage. As we previously explained, *supra*, Defendants' and management's self-serving declaration and deposition testimony is insufficient to defeat summary judgment in light of substantial evidence that they failed to comply with the relevant portions of the FLSA. *Fusion*, 548 F. Supp. 3d at 531. The Court declines to use these vague and conclusory declarations and depositions as a basis to deny summary judgment, and will therefore grant summary judgment on Claim I of Plaintiff's Motion.

**(E) Seizing Tips**

Plaintiff next claims that partial summary judgment is warranted on the basis that there is no genuine dispute that Defendants seized employees' tips. (Doc. 23 at 18-19.) Defendants contend that no tips were "seized" from employees and that tips were always redistributed back to tipped employees. (Doc. 27 at 18.)

The FLSA prohibits employers from keeping tips earned by their employees, instead requiring in accordance with 29 U.S.C. § 203(m) that all tips received by an employee are retained by that employee or pooled for employees who customarily and regularly receive tips:

> (2)(A) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>
> > (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> >
> > (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.
> >
> > The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
>
> (B) An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203(m).

Plaintiff contends that summary judgment should be granted on this Claim because there is no dispute of fact that Defendants did not redistribute tips back to employees. (Doc.

23 at 18-19; SOF ¶ 30, 36-28.) Defendants argue that they maintained a valid tip pool arrangement and properly distributed tip pool funds to employees. (Doc. 27 at 18-19.)

Defendants reference the deposition testimony of Lopez, in which she states that she witnessed managers redistributing tips to runners and bartenders. (Lopez Dep. at 34:2-40:5) ("It is given to the bartender and the food runner.") Ramirez Perez also stated that she witnessed management distributing tip pool proceeds to tip pool participants when she was a server. (*See* Ramirez Perez Dec. ¶ 4.) Defendants also cite to Figueroa's post-discovery declaration, where he claims he saw tips being redistributed back to employees:

> When I was a server, I contributed a percentage of my net sales to the restaurant's tip pool. Other servers and bartenders did the same. At the end of the night, I regularly witnessed management distribute part of the tip pool proceeds to the bartenders. I also witnessed management distribute the remaining tip pool proceeds to the rest of the tip pool participants (food runner, busser, guacamolero) at the end of the week on Sunday. At no point as a server or manager have I learned that La Tolteca, Carlos De Leon, or any manager kept any tip pool moneys for themselves and highly dispute that ever happened.

(Figueroa Dec. ¶ 4.)

Additionally, Defendants reference De Leon's deposition testimony and post-discovery declaration, in which he explained that management distributed the tips to employees. (De Leon Dep. 127:18-129:6; De Leon Dec. ¶ 8.) De Leon testified that he and his managers generally distributed tips to employees on Sunday. (*Id*.) Defendants also produced some sporadic records that document the collection and distribution of monies received by employees. (*See* Docs 21-22 and 21-23.) As we explain, *supra*, Defendants'

failure to keep accurate records as to whether tips were actually and properly redistributed is dispositive. For the few sporadic records that Defendants do provide, the Defendants concede that these records do not document the actual tips received and paid out, but rather a static percentage of wages. (SOF ¶¶ 93, 97; RSOF ¶¶ 91, 95.) The lack of adequate recordkeeping in violation of Section 11(c) of the Act means that Defendants would not be able to show at trial that they operated a valid tip pool and did not improperly seize tips from employees.

Defendants' after-the-fact and self-serving statements by management fail to create a genuine dispute of material fact as to whether Defendants improperly seized the tips from employees in light of the clear failure to consistently keep records. *See Gonzalez*, 678 F.3d at 263. Without adequate recordkeeping, there is no basis by which Defendants can meet their burden at trial of proving that all tips were contributed to a valid tip pool through their vague and self-serving statements. Therefore, partial summary judgment will be granted for Claim II of Plaintiff's motion.

**(F) Overtime Compensation**

Plaintiff next seeks summary judgment that Defendants violated § 7(a) of the FLSA by failing to pay their kitchen employees the statutory overtime premiums. (Doc. 23 at 14-15.) Defendants contend that they complied with all relevant overtime provisions. (Doc. 27 at 19-20.)

Section 7(a) of the FLSA requires employers to either (1) limit their employees'
workweek to 40 hours or (2) pay their employees an overtime premium—calculated at 1.5
times the employees' standard rate of pay—for hours over 40 in a workweek:

> (a)(1) Except as otherwise provided in this section, no employer shall employ
> any of his employees who in any workweek is engaged in commerce or in the
> production of goods for commerce, or is employed in an enterprise engaged in
> commerce or in the production of goods for commerce, for a workweek longer
> than forty hours unless such employee receives compensation for his
> employment in excess of the hours above specified at a rate not less than one
> and one-half times the regular rate at which he is employed.

29 U.S.C. § 207.

Generally speaking, the plaintiff in an FLSA case bears "the burden of proving [at
trial] that [an employee] performed work for which he was not properly compensated." *Sec'y
U.S. Dep't of Labor v. Central Laundry, Inc.*, 790 F. App'x. 368, 371 (3d Cir. 2019) (internal
citation omitted). But, since that burden is difficult to meet if the employer failed to maintain
adequate records, "'rather than penalizing the employees by denying recovery based on an
inability to prove the extent of undercompensated work,' the [Department of Labor] may
'submit sufficient evidence from which violations of the Act and the amount of an award may
be reasonably inferred.'" *Central Laundry*, 790 F. App'x. at 372 (quoting *Martin v. Selker
Bros.*, Inc., 949 F.2d 1286, 1296–96 (3rd Cir. 1991)).

Plaintiff argues that there is no genuine dispute of fact that Defendants failed to pay
their kitchen employees overtime compensation. (*See* Doc. 23 at 14-15; SOF ¶¶ 46-51.)
Plaintiff contends that "[k]itchen employees at La Tolteca worked over forty hours per

workweek (SOF ¶¶ 46-7) and the undisputed facts show that Defendants failed to pay

overtime choosing instead to pay employees a set salary. (SOF ¶¶ 43, 49)." (Doc. 23 at 15.)

In response, Defendants allege that their kitchen employees' overtime pay was incorporated

into their pre-set salary (RSOF ¶ 49), and that the evidence offered by Plaintiff does not

definitively show that any employee was not paid overtime. (Doc. 27 at 19-20.) The Court

concludes that summary judgment is warranted on this Claim.

In alleging a genuine dispute of material fact, Defendants reference De Leon's post-

discovery declaration that states that he calculated kitchen employees' salaries to "cover"

overtime pay:

> During February 16, 2016 to October 1, 2017, La Tolteca paid kitchen
> employees Raul Garcia, Willian Ramirez, and Luis Argote Contreras a salary
> which included payment for overtime hours worked. These three employees
> requested to be paid a fixed amount and to work a guaranteed number of hours.
> Therefore, I ensured the three employees worked a fixed number of hours
> every week and that they did not exceed that number so their pay covered all
> hours worked. I calculated these employee's regular pay for 40 hours plus the
> additional pay based on the overtime premium to determine the proper
> compensation. For example:
>
>> a) During part of this time, Garcia was paid $13.50/hr and worked
>> 55 hours per week. 40 hours at $13.50 equaled $540.00. 15
>> hours of overtime at the overtime rate of $20.25 ($13.50 x. 1.5)
>> equals $303.75. The total wages due to Garcia on a weekly basis
>> was $843.75 ($540 + $303.75) or $1,687.50 biweekly. I rounded
>> Garcia's biweekly pay to $1,700. Notably, a review of Garcia's
>> payroll records after October 1, 2017, when he started to clock
>> in and out, shows he averaged approximately $1,700 biweekly
>> inclusive of overtime. (Exh. A, Payroll Journals October 1, 2017
>> to December 31, 2017).

b) During part of this time, Ramirez was paid $14.25/hr and worked 55 hours per week. 40 hours at $14.25 equaled $570.00. 15 hours of overtime at the overtime rate of $21.38 ($14.25 x. 1.5) equals $320.66. The total wages due to Ramirez on a weekly basis was $890.66 ($570 + $320.66) or $1,781.32 biweekly. La Tolteca rounded Ramirez's biweekly pay to $1,800. A review of Ramirez' payroll records after October 1, 2017 shows he averaged approximately $1,800 biweekly inclusive of overtime. *Id*.

c) Argote was only paid a salary for approximately six weeks (August 13, 2017 to September 17, 2017). During most of those weeks, he was paid $12.75/hr and worked 55 hours per week. 40 hours at $12.75 equaled $510.00. 15 hours of overtime at the overtime rate of $19.13 ($12.75 x. 1.5) equals $286.88. The total wages due to Argote on a weekly basis was $796.88 ($510 + $286.88) or $1,597.75 biweekly. La Tolteca rounded Argote's biweekly pay to $1,600. A review of Argote's payroll records after October 1, 2017 shows he averaged approximately $1,600 biweekly inclusive of overtime. (*Id*.).

(De Leon Dec. ¶ 11.)

As discussed more fully in the following section, Defendants consistently failed to maintain adequate records under the FLSA. Defendants failed to record the number of hours worked or the hourly rate for Raul Garcia, Willian Ramirez, or Luis Argote Contreras, instead only reporting a flat bi-weekly salary. (*See* Docs. 21-17, 21-18, 21-29.) The lack of adequate records of these employees' actual hours worked reveals that there is no evidence offered by Defendants to support De Leon's post-deposition declaration contending that there was a static amount of time that these employees were working or that their overtime hours were truly "covered" in their pay. (*See* De Leon Dec. ¶ 11.) Our sister courts in this Circuit have also referenced a Defendant's flat-rate salary as evidence

that kitchen employees were not paid overtime. *See Fusion*, 548 F. Supp. 3d at 526

(granting partial summary judgment for Walsh, in part because of Defendants' practice of

paying "their kitchen employees a static amount twice per month regardless of the number

of hours worked during the pay period.") Additionally, the Department of Labor has offered a

Personal Interview Statement of a kitchen employee revealing that they worked between

"60-65 hrs per wk," (Doc. 21-16) indicating that their hours were varied and greater in

number than the fifty-five (55) hours alleged by De Leon. (De Leon Dec. ¶ 11.) Based on

Defendants' admissions that they pay their kitchen employees a static amount twice a week

regardless of the actual of hours worked (*id*.) during the pay period, coupled with the lack of

adequate recordkeeping and employees' own statements to the Department of Labor, no

reasonable jury could conclude that Defendants paid their kitchen employees overtime in

accordance with the FLSA. Therefore, for similar reasons as outlined by the district court in

*Fusion*, 548 F. Supp 3d 513, the Court will grant summary judgment on Claim III of Plaintiff's

motion.

### (G) Liquidated Damages

Plaintiff next seeks summary judgment that he is entitled to liquidated damages

under § 16(c) of the FLSA. (Doc. 23 at 22.) Plaintiff alleges that he "may recover both

unpaid wages and an additional equal amount in liquidated damages for violations of

Sections 6 and 7 of the FLSA." (Doc. 23 at 22.)[16] Because the Court will grant summary judgment on the issue of Defendants' alleged violations of the relevant tip credit, minimum wage and overtime provisions, the Court will address whether liquidated damages are warranted as to each violation at this stage.

The FLSA permits the Secretary of Labor to recover unpaid wages and an additional equal amount of liquidated damages for violations of the FLSA. 29 U.S.C. § 216(c); *Secretary United States Department of Labor v. Am. Future Sys.*, 873 F.3d 420, 433 (3rd Cir. 2017). "Double damages are the norm, single damages are the exception." *Blan*, 2021 WL 1176063, at *7, 2021 U.S. Dist. LEXIS 59239, at *24 (quoting *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 814 (W.D. Pa. 2013)). Liquidated damages under § 16(c) are compensatory because they "ease the hardship endured by employees who were deprived of lawfully earned wages." *Am. Future Sys.*, 873 F.3d at 433.

Liquidated damages are mandatory unless the employer shows that it acted in good faith with reasonable grounds to believe that it was not violating the FLSA. *Id.; Blan v. Classic Limousine Transp.*, Civil Action No. 19-807, 2021 WL 1176063, at *7, 2021 U.S. Dist. LEXIS 59239, at *24 (W.D. Pa. Mar. 29, 2021). The employer's good faith is a subjective inquiry that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d

---

[16] Because Defendants only reference violations of the minimum wage and tip credit notice provisions and overtime provisions in their Brief in Support of Partial Summary Judgment (Doc. 23), the Court will address only those claims for liquidated damages.

Cir. 1984). In contrast, the reasonableness of the employer's grounds for believing it was complying with the Act is an objective inquiry. *Blan*, 2021 WL 1176063, at *7. "To prove good faith, an employer must show that it took affirmative steps to ascertain the FLSA's requirements but violated the provisions anyway." 48B Am. Jur. 2d Labor and Labor Relations § 3393 Standards for court's discretion in awarding liquidated damages (2021); *see also Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 125 (3d Cir. 2017).

The willfulness inquiry regarding the FLSA's statute of limitations and the "good faith" inquiry regarding liquidated damages are interrelated. Indeed, a finding of willfulness precludes a finding "that defendant acted in good faith*." See Stillman v. Staples, Inc.*, No. CIV.A.07-849(KSH), 2009 WL 1437817, at *22 (D.N.J. May 15, 2009). Because the Court finds that Defendants' violations were "willful," *see supra* pp. 20-22, Defendants cannot successfully allege that they acted in reasonable good faith with respect to liquidated damages. Nonetheless, assuming *arguendo* that Defendants did not willfully violate the relevant provisions of the FMLA and did have a good faith belief they were complying with the Act, the Court will analyze each of Plaintiff's bases for liquidated damages under the reasonableness prong of the good faith analysis to underscore that summary judgment would still be warranted.

**(1) Reasonableness of Defendants' Belief Regarding Tip Credit Provisions**

The Court will first address the alleged reasonableness of Defendants' good faith belief that they were complying with Section 6 of the FLSA with respect to their tip credit and

minimum wage violations. Plaintiff contends that "Defendants cannot point to any evidence that they . . . had reasonable grounds for believing their pay practices were in compliance with the Act." (Doc. 23 at 23.) Defendants contend that they "had good faith and reasonable grounds for believing they were in compliance with the FLSA," and that "there is an issue of material fact regarding its good faith defense" as to its minimum wage practices. (Doc. *27* at 22-23.) The Court disagrees.

In their Brief in Opposition to Partial Summary Judgment, Defendants contend that "De Leon testified that based on his almost 30 years of experience in the restaurant industry, he believed the tip notice provided to tip credit employees was sufficient, which it was." (*Id.* at 23.) Defendants also argue that "De Leon took affirmative steps by reviewing the DOL's website and posters" and that "Defendants have not been the subject of previous FLSA litigation, posted FLSA posters at the restaurant, and reported wages and income to the IRS, which, at minimum, demonstrates there is an issue of material fact regarding its good faith defense." (*Id.*)

The Court finds that these self-serving statements by De Leon and minimal alleged compliance with relevant IRS reporting obligations do not create a genuine issue of material fact in light of the fact that Defendants consistently failed to keep adequate records regarding the alleged tip credit and minimum wage that they were providing to employees. (*See* Docs. 21-22 and 21-23.) Defendants do not provide the Court with any basis to conclude that their failure to adequately provide tip credit notice or keep records of the

amount of tips and wages employees were receiving was done with a reasonable, good faith belief that they were complying with Section 6 of the Act. No reasonable jury could find that Defendants met their "plain and substantial burden" to show they are entitled to relief from liquidated damages as to their willful tip credit and minimum wage violations. *See Am. Future Sys.*, 873 F.3d at 433. Therefore, the Court will grant Plaintiff summary judgment on the issue of whether Plaintiff is entitled to liquidated damages arising from Defendants' violations of Section 6 of the FLSA.

**(2) Reasonableness of Defendants' Belief Regarding Overtime Provisions**

The Court now addresses the alleged reasonableness of Defendants' good faith belief that they were complying with Section 7 of the FLSA with respect to their overtime violations. Plaintiff contends that, even if Defendants can show they met the subjective "good faith" prong as to their belief they were complying with the FLSA, "Defendants cannot point to any evidence that they . . . had reasonable grounds for believing their pay practices were in compliance with the Act." (Doc. 23 at 23.) Plaintiff claims that "Defendants have offered no defense at all" as to their overtime compensation violations, and thus should be liable for liquidated damages. (Doc. 23 at 18.) Defendants argue that De Leon believed "the salary payment to kitchen employees was proper because it included payment for overtime hours, which it was." (Doc. 27 at 23.)

The Court finds that, notwithstanding De Leon's post-deposition declaration (De Leon Dec. ¶ 11), no reasonable person under similar circumstances would believe in good

faith that they were compliant with the relevant overtime provisions of the FLSA. As we have

discussed, *supra*, the willful absence of timekeeping in relation to the kitchen employees at

issue prevents us from determining whether the employees indeed worked a static number

of hours per week, or whether their salaries adequately compensated for overtime hours, as

De Leon alleges without any documented evidence. (*See* De Leon Dec. ¶ 11.) Defendants

would likely attempt to justify the lack of records surrounding kitchen employees' hours

worked as a product of those employees being on a fixed bi-weekly salary with static hours,

but this proposition is contradicted by evidence that these employees had variable hours

that were greater in number (*see* Doc. 21-16) than those alleged by De Leon and the fact

that De Leon confirmed that these employees were "always paid an hourly wage" (De Leon

Dep. 157:15-19). The willful lack of adequate recordkeeping provides the Court with no

basis to determine whether these kitchen employees' salaries ever truly compensated paid

time and a half for work that exceeded forty (40) hours in a workweek. Therefore, we are

only left with De Leon's post-deposition explanation that has no evidentiary support in the

record and is contradicted by the statements of a kitchen employee. (*See* Doc. 21-16.)

Without consistent and adequate recordkeeping, and in light of evidence that

employees had variable hours that exceeded the "static" 55 hours alleged by De Leon, no

reasonable employer in Defendants' position could conclude that it was reasonable to

"cover" overtime in a bi-weekly salary. *See Am. Future Sys.,* 873 F.3d at 433. Thus,

Defendants fail to meet the second "reasonableness" requirement of the liquidated

damages analysis, and the Court will grant Plaintiff summary judgment that he is entitled to liquidated damages arising from Defendants' willful violations of Section 7 of the FLSA.

### (H) Injunctive Relief

Plaintiff next argues for summary judgment on the issue of whether Defendants' "behavior justifies injunctive relief to help ensure future employees of Defendants do not suffer the same harm." (Doc. 23 at 26.) Defendants respond by claiming that granting injunctive relief would be improper at this stage without a hearing. (Doc. 27 at 24.) The Court concludes that injunctive relief is warranted at this stage.

The FLSA authorizes district courts to issue injunctive relief "restrain[ing] violations" of sections 206 and 207 upon a showing of cause. 29 U.S.C. § 217. "Whether to grant an injunction is within the court's sound discretion." *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 815 (W.D. Pa. 2013) (citing *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 215, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959) and *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989), *aff'd*, 914 F.2d 242 (3d Cir. 1990)); *Acosta v. Heart II Heart, LLC*, 2019 WL 5197329, at *9. Courts consider several factors in deciding whether to issue an injunction under § 217, including the employer's past and current conduct and "most importantly, whether the employer can be counted on to comply with the FLSA in the future." *Sec'y United States Dep't of Lab. v. Mosluoglu, Inc.*, No. 22-2749, 2023 WL 5972044, at *5 (3d Cir. Sept. 14, 2023) (citing *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 815 (W.D. Pa. 2013)).

"Where the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980). As the United States Court of Appeals for the Fifth Circuit has stated: "The issuance of a permanent injunction in FLSA cases does not subject an employer against whom it runs to a penalty or hardship since it requests him to do what the Act requires anyway—to comply with the law." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975).

After a four-year-long investigation of Defendants' compliance with the FLSA, the record reveals that Defendants failed to adequately keep records of their employees. (*See, e.g.,* Docs. 23-11 and 23-12.) Defendants' suspect and after-the-fact argument that they provided overtime by incorporating it into their kitchen employees' salaries, rather than clearly calculating and documenting their employees' overtime hours and compensation, also reveals a continued reluctance to fully comply with the FLSA. Defendants offer no promises of current or future compliance with the FLSA anywhere in the record. (*See* Doc. 27 at 24-25.) The Court is not persuaded that "there is no reasonable probability of a recurrence of the violations." *Marshal*, 634 F.2d at 1118. Although Defendants cite authority showing that courts in this Circuit have declined to grant injunctive relief at the summary judgment stage (Doc. 27 at 24), Plaintiff has cited circumstances like those found here where courts in this District and Circuit have enjoined parties from future violations of the

FLSA at this stage. *See Acosta v. Revolutionary Home Health, Inc.*, 2020 WL 1953594 (M.D. Pa. April 23, 2020) (granting injunctive relief against Defendants at summary judgment); *Fusion,* 548 F. Supp. 3d at 533 (same); *Dole v. Haulaway, Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989), *aff'd*, 914 F.2d 242 (3d Cir. 1990). The Court finds that Plaintiff has shown cause as to why Defendants should be enjoined from violating the FLSA in the future under § 17. Rather than penalizing Defendants, the injunction will serve as a reminder to Defendants to uphold its obligations under the FLSA. Claim VII of Plaintiff's motion will be granted.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment (Doc. 21) will be granted in its entirety. In accordance with this decision, the only remaining issues are what backpay and liquidated damages are owing.[17] An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[17] A trial will be scheduled to resolve these issues by separate Order.